UNITED STATES of America, Plaintiff–Appellee,

v.

Benjamin VALLES & Roberto Carrera, Defendants–Appellants.

Nos. 94–1804, 94–1805.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1994.

Decided Dec. 1, 1994.

Ronald D. May, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S. in No. 1804.

James A. Graham, Chicago, IL (argued), for Benjamin Valles.

Barry Rand Elden, Asst. U.S. Atty., Ronald D. May, Asst. U.S. Atty. (argued), Crim. Receiving, Appellate Div., Chicago, IL, for U.S. in No. 1805.

Deborah J. Gubin, Chicago, IL (argued), for Roberto Carrera.

Before CUMMINGS, GOODWIN * and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

On October 14, 1992, a grand jury indicted Benjamin Valles and Roberto Carrera, along with several other individuals, for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On December

* The Honorable Alfred T. Goodwin of the United States Court of Appeals for the Ninth Circuit is sitting by designation.

3, 1993, following a brief trial, a jury returned guilty verdicts against Valles and Carrera on both counts; the district court sentenced each defendant to 121 months' imprisonment and a $6,000 fine. Defendants now challenge several of the court's trial rulings regarding a confidential informant, known only as "Tony," who had participated in the government's investigation. We reject these challenges and affirm both defendants' convictions.

## FACTS

### I. The Deal

The events surrounding defendants' arrest and subsequent conviction transpired within a short time frame in the fall of 1992. On September 9, 1992, a confidential informant known as "Tony" introduced Northeastern Metropolitan Enforcement Group (NEMEG) agent Fabio Calderon, working undercover as a drug dealer, to defendant Benjamin Valles. At a meeting at Valles' townhouse in Bensenville, Illinois, Calderon and Valles arranged a drug transaction involving 10 kilograms of cocaine, for a total price of $300,-000. Valles gave Calderon his beeper number and a sample of the cocaine proposed for sale. Stating that he needed to speak to his associates regarding the specifics of the deal, Valles then drove to another apartment in Wood Dale, Illinois, later identified as defendant Roberto Carrera's, while Tony and Calderon waited outside the townhouse. On returning, Valles reported that his suppliers were away on business, and stated that he would contact Calderon to set up a subsequent meeting.

Four days later, on September 13, 1992, Valles contacted Calderon directly to arrange a meeting with Calderon and other individuals involved in the transaction (Def. Br. 5). Calderon, another NEMEG agent named Art Martinez and Tony drove to Valles' townhouse on the evening of September 14, 1992, and Valles directed them to Carrera's apartment. A man named Miguel Cardona subsequently arrived and, in the presence of Valles and Carrera, discussed the specifics of the cocaine purchase with Martinez, including the provision by Martinez of a "load" car to transport the cocaine. At the close of the meeting, Cardona asked Martinez and Calderon to communicate solely through Valles' pager in the future.

After several subsequent discussions, the parties agreed to conduct the cocaine transaction on September 17, 1992, at Carrera's apartment. At about 3 p.m. on that date, agents Calderon and Martinez met with Cardona, Carrera and Carrera's roommate, Saul Rios, to consummate the deal. Martinez took Cardona to the load car, which drug agents had equipped with a tracking device, and Cardona drove away to pick up the cocaine. Rios went with Martinez and Calderon to the parking lot of a nearby mall, where two undercover agents were waiting with the money, and counted the bundles of bills. The three men then returned to Carrera's apartment; Martinez and Calderon left, first giving Carrera a cellular phone number so that he could contact them when Cardona returned with the cocaine.

In the meantime, Cardona had driven the load car to a garage at the intersection of 45th Street and Western Avenue in Chicago and exited the vehicle. Another man drove the load car to a house in Chicago, where he pulled into the adjoining garage. About an hour later the man returned to 45th and Western and picked up Cardona, who subsequently called Martinez and Calderon to tell them that he would be back shortly. When the load car returned at about 8:30 p.m., Calderon inspected it and determined that it contained nine kilograms of what appeared to be cocaine. Acting on a prearranged signal, NEMEG agents moved in and arrested Cardona, Carrera and Rios; they apprehended Valles at his Bensenville townhouse shortly thereafter, and later searched the Chicago house where the load car had stopped and recovered an additional two kilograms of cocaine.

### II. The Trial

At trial, defendants made numerous attempts to elicit information about informant Tony. Counsel for Valles attempted to cross-examine agent Calderon in detail about his relationship with Tony, and also asked the court to authorize a subpoena for Tony or

issue an order requiring the government to produce Tony in court. Judge Zagel sustained the government's objections to certain questions about Tony during agent Calderon's cross-examination and the cross-examination of another drug agent and ruled on the basis of a pre-trial motion that the government was privileged from producing Tony. The court subsequently denied defendant Valles' request to give the jury a "missing witness" instruction concerning Tony.

Defendants also attempted to cross-examine agent Calderon regarding his pre-trial reports and attendance at preliminary hearings in the case. The trial judge sustained objections to these questions as well.

## ANALYSIS

### I. Refusal to order production of Tony

■ Defendants challenge the district court's decision allowing the government to withhold Tony's identity. We review a district court's denial of a motion to disclose the identity of a confidential informant for abuse of discretion, and ask only "whether any reasonable person could agree with the district court." *United States v. United States Currency, in the Amount of $103,387.27,* 863 F.2d 555, 561 (7th Cir.1988). On this standard, defendants' argument falls short.

■ The "confidential informant privilege" protects from disclosure an informant's identity and his communications with the government that may tend to reveal his identity. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Herrero,* 893 F.2d 1512, 1525 (7th Cir.1990), certiorari denied, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644. The government is granted this limited privilege as a right, and need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege. *Dole v. Local 1942, IBEW,* 870 F.2d 368, 372 (7th Cir.1989). While a defendant can overcome the confidential informant privilege by demonstrating a need for the information, he bears this burden in the face of an assump-

tion that the privilege should apply. *United States v. Bender,* 5 F.3d 267, 270 (7th Cir. 1993) (defense counsel must establish that defendant "possesses a genuine need of informant disclosure that outweighs the public's interest"); *United States v. Andrus,* 775 F.2d 825, 842 (7th Cir.1985) (same); *United States v. Tucker,* 552 F.2d 202, 209 (7th Cir.1977) (same).

■ The Supreme Court has instructed courts to balance the defendant's asserted need against the government's interest, considering "the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors" in determining whether to order disclosure. *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 629. Informants who played major roles in the criminal occurrences will of course offer more significant testimony than those whose participation was peripheral; a showing that a potential defense may depend on the informant's involvement also weighs in favor of disclosure. See *id.*

In this case, the district court properly concluded that defense counsel's offer of proof regarding the need for disclosure was insufficient to defeat the confidential informant privilege.[1] Although defendants stated that they hoped Tony's testimony, if produced, would support an entrapment or government overreaching defense (R. 122), they offered not a shred of evidence bolstering this contention. Defendants' conclusory assertion that prosecutors would have offered Tony's testimony unless they feared its effect does not demonstrate that entrapment or overreaching were plausible defenses or that Tony's testimony was necessary or sufficient to establish them. The confidential informant privilege "will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful." *Local 1942,* 870 F.2d at 373 (citations omitted).

Defendants also failed to demonstrate (and the facts do not support) that Tony played more than a marginal role in the events

---

1. While the judge did not hold a formal hearing to balance the factors set forth in *Roviaro,* the record reflects that he gave defendants numerous opportunities to present arguments that Tony was a material witness whose testimony was required.

surrounding the convictions. According to trial testimony, Tony originally introduced Calderon to Valles and subsequently attended one other meeting between the parties. He did not participate in further communications or in the ultimate cocaine-for-cash exchange; his silent presence at the initial meetings is insufficient to render him a significant witness whose testimony would be required under *Roviaro*. While Tony was not strictly a "tipster" in that he played a peripheral role in the transaction, neither was he a "participant" whose conduct during the transaction was centrally relevant. See *Andrus*, 775 F.2d at 842 (no disclosure of informant who instigated investigation of defendant but was not present at transactions alleged in indictment); *United States v. Mabry*, 953 F.2d 127, 130–32 (4th Cir.1991) (no disclosure of informant who did not witness drug transaction), certiorari denied, —— U.S. ——, 112 S.Ct. 1951, 118 L.Ed.2d 555; *United States v. Smith*, 857 F.2d 682, 683 (10th Cir.1988) (no disclosure of informant who made introductions but did not participate in crime).

As the Fourth Circuit has noted, many informants may occupy a middle ground status somewhere between participants and mere tipsters. See *Mabry*, 953 F.2d at 131. We do not mean to suggest that all informants who serve as mediators between undercover agents and suspected drug dealers are mere tipsters, or that they can never assume a more central role such that their identification and production may be required. But in this case, where Tony receded into insignificance immediately after performing the initial introduction and was not even present during the attempted sale, we cannot say that the district judge abused his discretion in refusing to overcome the confidential informant privilege.

## II. Limitation of cross-examination regarding Tony

■ Defendants further argue that in limiting their ability to cross-examine drug enforcement agents regarding Tony, the district judge deprived them of their Sixth Amendment right to confront witnesses. While permitting defense counsel to inquire

generally into how often Tony had worked with agent Calderon and whether he had been paid, the judge sustained objections to questions about how many times Tony had received money from agents, whether he used narcotics or carried a gun, or whether he was promised money if he made a case for the government. Defendants contend that these limitations impermissibly deprived them of the right to show interest, bias, or motive on the part of the agents (principally Calderon) under cross-examination.

■ This argument lacks merit. Although the Sixth Amendment confrontation clause does guarantee defendants the right to cross-examine witnesses, see *Ohio v. Roberts*, 448 U.S. 56, 62–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980), the trial judge retains broad discretion in limiting the extent and scope of cross-examination. *United States v. Pizarro*, 717 F.2d 336, 347 (7th Cir.1983). This is true even when the defendant is attempting to show interest, bias or motive: a trial court violates the Sixth Amendment only where it has so abused its discretion as to prevent the jury from making a discriminating appraisal of the witness' testimony. *United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir.1987).

In this case, the trial judge properly limited cross-examination of government witnesses where the questions were designed not to elicit information regarding the witnesses' possible bias, but rather to mine for further details concerning Tony, whose importance to the case already had been deemed minimal. The district court permitted defense counsel to impeach Tony's credibility *in absentia* and to make relevant inquiries regarding the agents' bias or interest, and was within its discretion in precluding further cumulative and confusing inquiries about a nontestifying, marginally significant witness. *United States v. Robinson*, 832 F.2d 366, 373 (7th Cir.1987), certiorari denied, 486 U.S. 1010, 108 S.Ct. 1739, 100 L.Ed.2d 203.

## III. Limitation of Calderon's cross-examination

■ Defendant Carrera argues that the trial judge impermissibly restricted his right

to cross-examine agent Calderon regarding the date of defendants' preliminary hearing and whether he had completed his reports by that time. At oral argument defense counsel explained that she hoped by these questions to show that Calderon had an opportunity to concoct a report that jibed with information adduced at the hearing. However, counsel neglected to make a similar offer of proof to the trial court; having before him no plausible rationale for allowing this apparently purposeless digression, the trial judge was within his discretion in limiting it. See Fed. R.Evid. 103(a)(2) (requiring counsel to submit offers of proof regarding substance of evidence sought).

In any event, both defendants took advantage of numerous opportunities to explore Calderon's credibility before the jury. See Tr. 143, 150. Limits on Calderon's cross-examination thus did not unduly interfere with the jury's ability to appraise the agent's motive or potential bias. See *United States v. Williams*, 858 F.2d 1218, 1223 (7th Cir. 1988), certiorari denied, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787.

IV. Missing witness instruction

■ At the close of trial, defense counsel for Valles sought a jury instruction allowing the jury to draw an inference that Tony's testimony, had it been available, would have been unfavorable to the government's case. The district judge refused this request, stating that although he would not rule out such an instruction "purely as a matter of law, ... in the context of this case and the evidence that the jury has before it and the posture of the defense, this instruction is likely to mislead the jury rather than to aid the jury" (R. 261). Defendant Valles now appeals the district court's refusal to give the "missing witness" instruction.

■ To establish entitlement to a missing witness instruction, a defendant must prove two things: first, that the absent witness was peculiarly within the government's power to produce; and second, that the testimony

would have elucidated issues in the case and would not merely have been cumulative. *United States v. Romo*, 914 F.2d 889, 893 (7th Cir.1990), certiorari denied, 498 U.S. 1122, 111 S.Ct. 1078, 112 L.Ed.2d 1183; *United States v. Rollins*, 862 F.2d 1282, 1297–98 (7th Cir.1988), certiorari denied, 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648. Both sides here concede that the government exerted sole control over Tony's availability as a witness; the remaining question is whether Tony's testimony would have been helpful to the defense.

As explained above, defendant Valles failed to demonstrate the materiality of Tony's testimony in seeking to overcome the confidential informant privilege. Defendant Valles made a scarcely better showing during the jury instruction conference, and on appeal could only reiterate the unsubstantiated allegation that "Tony's testimony could have thrown light on the guilt or innocence of Valles and on whether Valles was entrapped" (Def.Br. 24).[2] These conclusory assertions do not add up to a finding of materiality that would merit the missing witness instruction. Nor, given that defense counsel was permitted to argue the inferences in closing, do these assertions substantiate a claim that Valles' rights were prejudiced. This Court has held that "in cases ... where it is debatable whether the absent witness' testimony would have elucidated the issues in the case, there should be latitude for the judge to decide whether the requested instruction would be unnecessary and time consuming for the jury." *United States v. Mahone*, 537 F.2d 922, 927 (7th Cir.1976), certiorari denied, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627. Here the judge properly exercised his discretion, and we will not quarrel with this or the other challenged rulings. Accordingly, the convictions of both defendants are affirmed.

---

2. Defendant Valles also submitted his failure to return early phone calls from Tony, which emerged during the direct examination of agent Calderon, as evidence on which Tony's testimony would be helpful. It is difficult to see what Tony could contribute other than blatant speculation about Valles' motives in not returning his calls. The jury had before them the evidence that the first calls had gone unreturned, and were capable of considering the suggested inference of entrapment with no assistance from Tony.