73 F.3d 364
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Eduardo ESPARZA-PLASCENCIA and Javier Medina-Acevedo,
Defendants-Appellants.
 Nos. 94-1530, 94-3936.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 25, 1995.
Decided Dec. 15, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Feb. 15, 1996.
 
 Before CUMMINGS, COFFEY, and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Defendants Eduardo Esparza-Plascencia ("Esparza") and Javier Medina-Acevedo ("Medina") and six others were arrested by the Drug Enforcement Administration ("DEA") in March 1993 after an undercover operation where Marcos Martinez and Jose Restrepo, both cooperating individuals ("CIs") acting as drug sellers, arranged the sale of three kilograms of cocaine to defendants. In addition to Esparza and Medina, the two-count indictment charged Cesar Villalvazo-Ramirez ("Villalvazo"), Jose Javier Villagomez-Gonzalez ("Villagomez") and Mario Ascensio-Flores ("Ascensio") with conspiring to possess cocaine, with attempting to distribute and also attempting to possess cocaine with intent to distribute in violation of 21 U.S.C. Sec. 846. Villalvazo and Villagomez pled guilty to the conspiracy count and agreed to testify against their co-defendants. Ascensio also pled guilty but did not testify at trial. After a six-day jury trial, a jury found Esparza and Medina guilty. Esparza received a sentence of 100 months' imprisonment, a four-year term of supervised release and a $1,000 fine. Medina was sentenced as a career offender to 262 months' imprisonment followed by eight years' supervised release.
 
 
 2
 Esparza contends that the district court should not have refused a missing witness instruction. He also contends that the evidence against him was insufficient. Medina claims (1) ineffective assistance of counsel, (2) the district judge improperly limited Medina's examination of Villalvazo at a post-trial hearing, (3) the U.S. Sentencing Commission did not have authority to include conspiracy and attempt among the drug offenses qualifying as predicate offenses under the career-offender guideline, and (4) the district court erroneously found that Medina's 1987 state court conviction was for possession with intent to distribute marijuana.
 
 Facts
 
 3
 In the fall of 1992, Martinez, one of the two CIs, approached his brother-in-law Villalvazo and said that Martinez would be receiving kilograms of cocaine from California and that Martinez wanted Villalvazo's help in selling them. The latter said he would see what he could do.
 
 
 4
 In November 1992, Villalvazo was visiting a friend in a gift shop in the Riverside Mall in Riverside, Illinois, and was introduced to Villagomez. A few weeks later Villalvazo told Villagomez that Martinez knew a Colombian who was offering to sell kilograms of cocaine and asked Villagomez to help locate buyers. The latter said he would check with his people.
 
 
 5
 In February 1993, Villalvazo and Villagomez met with Martinez and Colombian Jose Restrepo, also a CI, in a restaurant in Cicero, Illinois. Restrepo was wearing a hidden recorder and microphone to tape the meeting. Villagomez and Restrepo exchanged phone numbers and cocaine kilogram price information but Restrepo did not contact Villagomez afterwards.
 
 
 6
 Subsequently in February, Villagomez ran into Esparza, who told Villagomez that Ascensio's cousin Javier was looking for a source of supply for kilograms of cocaine. Villagomez said he knew of a source and he remained in contact with Esparza while Villagomez tried to reach Villalvazo. In mid-March 1993, Villagomez did reach Villalvazo and told him to contact his brother-in-law Martinez because Villagomez knew persons who wanted to buy cocaine. Subsequently Villalvazo did contact Martinez and Villagomez contacted Esparza.
 
 
 7
 On March 16, Villagomez went to Villalvazo's Cicero apartment and told Esparza to assemble the purchase money. Villagomez also contacted Martinez. The same day, DEA agent Mitchem provided CIs Martinez and Restrepo with recording equipment and dropped them off at Villalvazo's apartment. Mitchem and another agent observed the two CIs meet Villalvazo and Villagomez and enter Villalvazo's apartment. While the CIs were inside the Villalvazo apartment, Esparza called to tell Villagomez that he was on his way to the nearby Los Comales restaurant where the transaction was to occur. Villagomez then told the CIs to meet him and Villalvazo at Los Comales and that after the arrival of the money he would bring it to the restaurant washroom and turn it over to CI Restrepo. After the CIs left, they were driven to Los Comales by agent Mitchem. Villagomez and Villalvazo then met the CIs at Los Comales. Villagomez told the CIs that he and Villalvazo were waiting for others to arrive with the money for the purchase. He also telephoned Ascensio to ask about the delay, and Ascensio said he was waiting for his cousin Javier (Medina) and Esparza.
 
 
 8
 Thereafter the CIs left Los Comales and were driven by agent Mitchem to a nearby McDonald's restaurant where agent James Walsh joined them. Subsequently Esparza, Ascensio and Medina arrived at Los Comales to meet with Villagomez and Villalvazo. Medina asked Villagomez if the "shit" (referring to cocaine) was there so that Medina could get the purchase price. Villagomez said the cocaine was there and Medina and Ascensio left in Medina's wife's car. Esparza then told Villagomez that they were bringing money for three kilograms of cocaine and would buy 15 more kilograms. Villalvazo then paged Martinez, who called back on agent Walsh's cellular phone. Agent Mitchem then drove the CIs back to Los Comales. Villagomez, Villalvazo and the CIs were waiting outside while CI Restrepo was telling Villagomez that they should postpone the deal until the money arrived.
 
 
 9
 Subsequently Ascensio called out to Villagomez and pointed to a van parking in front of Los Comales. When the side door of the van opened, Medina was seated inside holding a white plastic bag containing a brown paper bag full of money. Medina told Villagomez there was $69,000 in bundles of $5,000 in the bag, which he handed to Ascensio, who handed it to Villagomez. The latter and Restrepo then entered the restaurant and Villagomez displayed the money to Restrepo in a washroom in the restaurant. Thereafter Restrepo left the washroom, telling Villagomez he was going for the cocaine. However, when he exited Los Comales, agent Mitchem gave an arrest signal to other DEA agents.
 
 
 10
 After the arrests, the prisoners were transported to the DEA office where Medina asked the other prisoners who was the one who tricked. Agent Banks transported the prisoners to the Metropolitan Correctional Center ("MCC") in Chicago. Banks overheard Medina tell the prisoners "Don't tell them nothing" in Spanish. Agent Banks told them in Spanish to be quiet. Once in the MCC lockup, Medina told Villagomez and Villalvazo that Villalvazo should take the rap because he did not have any prior record.
 
 
 11
 When the trial occurred, the government intended to call Colombian CI Restrepo. Subsequently it developed that he was in Colombia, but neither defendant requested the district court to order the government to produce him. CI Martinez could not be located although the district court issued a material witness warrant for him. However, the government provided both CIs' handwritten statements to the defendants and the district court. At the jury instructions conference, the district judge refused a missing witness instruction tendered by defendants because he found that Martinez was unavailable to both sides and that the testimony of the two CIs would have been cumulative rather than elucidating.
 
 Refusal of missing witness instruction
 
 12
 The district court refused to give a missing witness instruction to the jury. Esparza asserts that this was error. However, Judge Nordberg found that Martinez was unavailable to both parties and that the testimony of Martinez and Restrepo would have been cumulative. This Court's Committee on Federal Criminal Jury Instructions disfavors a missing witness instruction, stating:
 
 
 13
 "It is the view of the Committee that a missing witness instruction should not be given. For the unusual circumstances where the court might find it appropriate, the following instruction is recommended...."
 
 
 14
 The instruction tendered by Esparza tracks the Committee's draft. In order for such an instruction to be given, a defendant must demonstrate that the government has control of the witness and that the witness's testimony would be relevant and non-cumulative. United States v. Valles, 41 F.3d 355, 360 (7th Cir.1994). As the district court found, the government endeavored to find Martinez, who proved to be unavailable to both sides. At any rate, the government had provided copies of handwritten statements of Martinez and Restrepo, the other CI, to the defendants and to the district court. The tendered instruction was inapt because not only was Martinez unavailable to both sides, but, as the district court found, his testimony would have been cumulative.
 
 
 15
 Esparza never requested the district court to order the government to produce Restrepo from Colombia. Moreover, based on the handwritten statements prepared by both CIs, which, as noted, were furnished to both parties, the testimony of both CIs would have been cumulative to testimony given by Villagomez and Villalvazo.
 
 
 16
 The evidence against Esparza was sufficient
 
 
 17
 Esparza contends that the evidence was insufficient to prove his guilt because the jury should have disbelieved the testimony of Villagomez and Villalvazo. However, it was for the jury to decide the credibility of these defendants. United States v. Cardona-Rivera, 904 F.2d 1149, 1152 (7th Cir.1990).
 
 Medina's assistance of counsel
 
 18
 Medina attacks the competency of his trial lawyer on the ground that he was given incorrect advice regarding his probable sentence if he rejected the government's offer of a plea agreement and was convicted. However, the lawyer did not know that Medina was qualified as a career offender because he had been convicted of a drug offense in state court in 1987. The presentence investigation report showed that Medina was a career offender and that the low end of his guideline range was 262 months' imprisonment, which was the sentence actually imposed.
 
 
 19
 The district court found that in view of his criminal history, Medina would have been sentenced as a career offender even if he had pled guilty. Therefore he cannot contend that he was prejudiced by counsel's advice. Strickland v. Washington, 466 U.S. 668.
 
 
 20
 At oral argument, without giving this citation to the Government, Medina's counsel cited Teague v. Scott, 60 F.3d 1167 (5th Cir.1995), apparently to show that trial counsel must inform his client of a government plea offer. As seen, defendant was advised of one plea offer, and the allegedly missing advice as to a second plea offer was immaterial in view of Medina's 1987 state court conviction.
 
 Alleged use of perjured testimony
 
 21
 To support his claim of government use of perjured testimony, Medina submitted a letter allegedly signed by Villalvazo alleging that the government told him what to say at trial. However, at the post-trial hearing, Villalvazo denied this under oath, and it was Judge Nordberg's prerogative to believe the denial.
 
 Sentencing Commission's authority
 
 22
 Medina contends that his federal offenses cannot serve as predicate offenses under the career-offender guidelines because they are for conspiracy and attempt. We recently rejected an identical argument in United States v. Damerville, 27 F.3d 254 (1994), and have not been persuaded to overrule it.
 
 
 23
 District court's finding that Medina's 1987 state court conviction was for possession with intent to distribute marijuana
 
 
 24
 Medina's state court conviction was for manual delivery of marijuana and possession with intent to distribute. Medina had pled guilty to this charge. Consequently the district court was justified in counting this conviction as a career-offender predicate. U.S. Sentencing Guidelines Sec. 4B1.2.
 
 
 25
 The convictions and sentences of both defendants are affirmed.