**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**SALOME FUAILETOLO ENOKA, Defendant.**

High Court of American Samoa
Trial Division

CR No. 13-05

June 24, 2005

Before RICHMOND, Associate Justice; MAMEA, Associate Judge; and SAOLE, Associate Judge.

Counsel: For Plaintiff, Fredrick O'Brian, Assistant Attorney General
For Defendant, Matt Pavelich, Assistant Public Defender

## ORDER DENYING MOTIONS TO SUPPRESS EVIDENCE AND REVEAL CONFIDENTIAL INFORMANT'S IDENTITY

### Background

At approximately 10:00am on February 9, 2005, Detective Justin Fa`afiti ("Det. Fa`afiti") received a phone call from a confidential informant ("CI") who told the detective that an adult female named Salome, driving in a black Jeep Cherokee SUV without a front bumper and with a California license plate in the rear, was headed eastbound towards the downtown area to deliver methamphetamine to a buyer. The CI told the detective that the information originated from the CI's friend, who, according to the CI, was the buyer of the methamphetamines. Shortly thereafter, the CI again contacted Det. Fa`afiti and reported having personally observed the person whom they called Salome making a drug sale to the buyer. The CI further reported that the person whom they called Salome stored the drugs in a small black zippered bag and that after the drug sale she left in the same black Jeep Cherokee, heading westbound in the direction of Fagatogo.

Upon receiving the second phone call, Detective Justin Fa`afiti ("Det. Fa`afiti") and his partner Detective Norman Heather ("Det. Heather") began driving their unmarked police vehicle eastbound towards Fagatogo in an attempt to intercept the suspect. When the detectives reached Pago Pago, they observed a black Jeep Cherokee headed westbound. The truck was missing its front bumper and had a California license plate in the rear. The detectives turned their vehicle around and silently followed the Jeep, which eventually pulled into the parking lot at the ANZ-Amerika Samoa Bank in Fagatogo. The detectives pulled their vehicle in right behind the truck, blocking the Jeep's exit from its parking space. Det. Fa`afiti got out of his car and went to the driver's side of the suspect's Jeep, knocking on the truck's heavily tinted window, while Det. Heather walked up to the passenger side window. The driver of the Jeep rolled the window down. Det. Fa`afiti then identified himself and asked the driver if her name was Salome. The driver confirmed that Salome was her name, providing her California identification card which indicated that her full name was Salome Fuailetolo Enoka ("Enoka"), the Defendant in this prosecution. Det. Fa`afiti then asked Enoka to exit the vehicle, informing her that he had information indicating that she was in possession of controlled substances. Enoka exited the vehicle, saying that she did not possess any such substances. Det. Fa`afiti then patted the suspect down for weapons and informed her that he intended to search the Jeep. Enoka responded by asking the detective if he had a warrant. Det. Fa`afiti said that he did not.

On the other side of the Jeep, at the same time that Enoka was exiting the vehicle, Det. Heather opened up the passenger side door of the truck and peered into the vehicle. Det. Heather testified that he opened the door because the heavily tinted windows were not allowing him to determine whether the truck contained any potentially dangerous passengers or weapons. Upon opening the door, he instantly spotted what looked like a marijuana cigarette placed in an ashtray and immediately informed Det. Fa`afiti of this find. Det. Fa`afiti then placed Enoka under arrest while Det. Heather finished searching the car. Between the two front seats, Det. Heather found a black zippered bag that appeared consistent with the bag the CI informed the detectives would be carrying methamphetamine. Det. Heather opened the bag and inside he found a small plastic bag containing a substance he recognized to be a methamphetamine. The detectives then transported Enoka and her vehicle to the police station.

On February 18, 2004, Plaintiff American Samoa Government ("ASG") filed an information with the Court, charging Enoka with two counts: the first of unlawful possession of the controlled substance of methamphetamine; the second of unlawful possession of the controlled substance of methamphetamine. On April 2, 2005, Enoka filed a motion

to suppress the evidence seized during the search of her vehicle and a motion to reveal the CI's identity. In that motion, Enoka contends that the February 9 search of her vehicle was done so in violation of her constitutional rights. Enoka further maintains that ASG must reveal the CI's identity because such information is relevant to her defense.

## Analysis

### I. Motion to Suppress

The United States Supreme Court has held that police officers, with probable cause, may search an automobile without a warrant. *See Cardwell v. Lewis*, 417 U.S. 583, 592-94 (1974); *Chambers v. Maroney*, 399 U.S. 42, 48 (1970); *Carroll v. United States*, 267 U.S. 132, 149 (1925) ("On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."). This rule is premised on a suspect's lesser expectation of privacy in his automobile and is not altered when the suspect's vehicle loses its mobility. *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) ("It is clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away . . . .").

Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant à man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll*, 267 U.S. at 162. *Draper v. United States*, 358 U.S. 307, 312 (1959).

When probable cause for a warrantless search of an automobile is premised upon information obtained from a confidential informant, a reviewing court should first ask whether the information is "reasonably trustworthy." Then, secondly, if the information is deemed trustworthy, the court should ask whether the information is in itself sufficient "to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *United States v. Zayas-Diaz*, 95 F.3d 105, 115 (1st Cir. 1996).

## A. Was the Informant's Information Trustworthy?

To test the trustworthiness of a confidential informant's tip, courts conduct a 'totality of the circumstances' analysis, focusing in on (1) the veracity or reliability of the informant; (2) the raw facts on which the informant based his or her knowledge and conclusions. *See Illinois v. Gates*, 462 U.S. 213, 229-31 (1983).

### 1. Confidential Informant's Veracity

■ In examining an informant's veracity, courts tend to focus on the informant's past performance as a supplier of information. An informant who has provided accurate information in the past is seen as a reliable source, even if those previous tips did not lead to a conviction or arrest. *See Colorado v. Arnold*, 527 P.2d 806, 809 (Colo. 1975) (finding that a tip that led to an arrest is sufficient to establish veracity); *Illinois v. Thomas*, 321 N.E.2d 696, 698 (Ill. App. Ct. 1974) (finding that an accurate tip can establish veracity, even if it does not lead to an arrest); 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE 106-07 (3d ed. 1996) (and cases cited therein).

■ In the present controversy, the detectives' alleged probable cause to search Enoka's truck came from two phone calls that Det. Fa'afiti received from the CI. Det. Fa'afiti alleges that he felt that the information was reliable because the CI had given accurate information on three prior occasions.[1] We find that this is sufficient to establish the veracity of the CI. An informant who has given three accurate tips in the past is generally seen as a reliable informant. And, this is true whether or not the police provide detailed information about those past tips. *Rhode Island v. Joseph*, 337 A.2d 523, 526-27 (R.I. 1975) ("While some detailing of an informant's track record might be desirable, it is not a necessity."). Therefore, we hold that the CI in this case is a reliable source.

### 2. Confidential Informant's Basis of Knowledge

■ Next, we will examine the raw facts provided by the CI to confirm whether the CI had an adequate basis for his or her knowledge and

---

[1] Although the information in the first phone call to Det. Fa'afiti was hearsay originating from an unknown third-party, the CI's second phone call was premised on information that the CI had observed directly. Thus, because the information gained in that second phone call is sufficient, standing alone, to create probable cause, there is no need to consider whether the unknown third-party is a reliable source.

conclusions. *Stanley v. Maryland*, 313 A.2d 847, 858 (Md. Ct. Spec. App. 1974) (finding that the informant must "furnish the raw data of his senses, so that the reviewing judge could draw his own conclusion from the data").

The CI told Det. Fa'afiti that he personally witnessed a women named Salome sell methamphetamine to a buyer; take the methamphetamine out of a black, zippered bag; and drive away, heading westbound, in a black Jeep Cherokee with a missing front bumper and a rear California license plate. We find that these detailed and accurate facts are sufficient for the CI to be justified in concluding that Enoka possessed controlled substances as she drove in the direction of Fagatogo. Although any person who happened to be standing on a street corner in Pago Pago on the morning in question could have known that a black Jeep Cherokee with a missing front bumper was heading in the direction of Fagatogo, only someone with inside information could have known that a black, zippered bag inside that vehicle contained methamphetamine.

Thus, in conclusion, we find that the CI's information is sufficiently trustworthy to be used as the basis for probable cause to search Enoka's vehicle.

B. Was the Informant's Information Sufficient to Create Probable Cause?

Having determined that the CI's tip was trustworthy enough to supply the basis for a finding of probable cause, the next step is to determine whether or not the detectives did, in fact, have probable cause to search the vehicle. As stated above, probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll*, 267 U.S. at 162; *Draper v. United States*, 358 U.S. 307, 312 (1959).

We hold that during the February 9 encounter, Det. Fa'afiti and Det. Heather had probable cause to search Enoka's truck. Having received a phone call from the CI—a known methamphetamine user and previous reliable informant—stating that Enoka had just completed a drug sale and was driving away from the scene of the sale, the detectives could have reasonably concluded that Enoka was, at the time of search, in the unlawful possession of a controlled substance.

Therefore, in sum, we find that because the detectives had probable cause to believe that the vehicle contained contraband, they did not need a

181

warrant to conduct a search of that vehicle.[2]

▪ Furthermore, we note that when officers have the authority to search a vehicle for contraband, they can constitutionally search any container or compartment of that vehicle which might reasonably contain that contraband. *See United States v. Ross*, 456 U.S. 798, 820-21 (1982); *Love v. Georgia*, 334 S.E.2d 173, 175 (Ga. 1985) ("The detective having probable cause to believe that drugs were located somewhere within the defendant's vehicle, the warrantless search of the entire vehicle was authorized, including the defendant's companion's purse.").

▪ Thus, we hold that the detectives' search of the truck's passenger compartment, the black, zippered bag and the glove compartment did not infringe on Enoka's constitutional rights.[3]

*1. Motion to Reveal the Confidential Informant's Identity*

Enoka moves this court to reveal the CI's identity, asserting that because such information is relevant to her defense, withholding it from her would be in violation of her constitutional rights.

▪ In *Roviaro v. United States*, 353 U.S. 53, 59 (1957), the United States Supreme Court stated that the government holds a qualified privilege to keep secret the identity of its confidential informants. The

---

[2] Both parties focused in on whether or not the detectives had "reasonable suspicion" to initially seize Enoka and her car, under the *Terry*-stop doctrine. Having found that the detectives had probable cause to search the vehicle, there is no need to provide a detailed analysis under the much more lenient "reasonable suspicion" standard set forth in *Terry v. Ohio*, 393 U.S. 1, 27 (1968). Therefore, we simply hold, in summary fashion, that the detectives had reasonable suspicion to stop and detain Enoka during the February 9 encounter.

[3] Enoka also very briefly argues that any statements made by her before she was put under arrest should be suppressed because they were in violation of her *Miranda* rights. It is well settled, however, that a defendant must be in custody before such a right can be violated. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). In *Berkemer v. McCarty*, 468 U.S. 420, 436-38 (1984), the United States Supreme Court held that for *Miranda* purposes, a motorist is not in custody when he or she is pulled over by the police. We find here that Enoka's encounter with the detectives was akin to a routine traffic stop because she was stopped in her vehicle when the detectives initially confronted her. Therefore, we find that she was not in custody before being formally put under arrest and thus her *Miranda* rights were not violated.

purpose of the rule is to foster the interests of the criminal justice system by encouraging citizens to come forward with information to aid law enforcement without fear of public disclosure. *Id.*

In *Roviaro*, the Court stated that there were three limitations of the privilege: (1) "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer"; (2) where "the identity of the informer has been disclosed to those who would have cause to resent the communication"; and, most importantly, (3) "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause . . . ." *Id.* at 60.

The first limitation provides that where the informant's communication will not reveal the informant's identity, such communication may be divulged. This limitation applies where the government has concealed both the informant's identity and the contents of that informant's communication. In such a situation, if it is possible to release only the contents of the communication, without making obvious the informant's identity, the government is often required to reveal such information. *Carbajal v. Village of Homestead*, 2003 WL 23138447 at *4 (E.D.N.Y. 2003) (holding that government should release contents of videotaped tip, where contents of the tape do not reveal identity of those involved). In the present case, however, ASG has already released the contents of the communication, so this limitation is not relevant to our discussion.

The second limitation provides that where the identity of the informer has already been disclosed to those who might resent it, other information about the informant may be released. This limitation applies, primarily, where the defendant already knows the informant's identity, but now seeks to learn more about the informant's background and personal information. *See United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1982) (where defendant already knows informant's identity, the government should reveal informant's address). The rational behind this limitation is that if the defendant already knows who the informant's identity, there is no need to try and keep hidden other relevant information about the informer. This limitation does not apply in the present case because the Enoka does not already know the identity of the informant and therefore revealing background information about the informant would defeat the privilege.

The third limitation provides that where the informant's identity is relevant to the defense of the accused, such information should be released. This limitation has constitutional ramifications. *United States v. Sanchez*, 988 F.2d 1384, 1392 (5th Cir. 1993). "If the privilege

interferes with the defendant's due process right to prepare his defense or if disclosure of the informant or his communication is essential to a fair determination of the defendant's guilt or innocence, the privilege must give way." *Id.* Enoka asks this court to utilize this limitation in revealing the CI's identity and therefore it will be the focus of our discussion.

Enoka bears the burden of establishing that the informant's identity will be helpful for her defense. *See United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994). And, in doing so, she must present specific facts to back her allegation. *See United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994). "The confidential informant privilege will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful." *Id.* (internal quotations omitted).

In *Roviaro*, the Court listed three non-exclusive factors a court can look to in balancing the defendant's need for the information: "the crime charged, the possible defenses and the possible significance of the informer's testimony . . . ." *Roviaro*, 353 U.S. at 62. Of the three factors, the most important is the "possible significance of the informer's testimony"—focusing primarily on the informant's degree of participation in the charged crime. *See Id.* (disclosure less important for peripheral observers than those who played a major role in the charged crime); *United States v. Lewis*, 40 F.3d 1325, 1335 (1st Cir. 1994) (finding that "[w]here the informant is a 'mere tipster,' as opposed to an active participant in the offense charged, disclosure is required only in the exceptional case where it is vital to a fair trial"); *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995) (finding that if an informant is an active participant in the crime, disclosure is generally required).

In the present controversy, Enoka's proffered defense to the crime is that her acquaintance, Rhine Haleck ("Haleck"), either planted the drugs in her truck or accidentally left them there. Enoka claims that the morning of her arrest, Haleck was in her vehicle smoking methamphetamine and that at one point he began to rustle around the car, looking under the seats and in the glove compartment, claiming that he was looking for money he had earlier lost in the truck. It was at this time, Enoka claims, that Haleck either planted the drugs in the truck or accidentally left them there. Enoka further claims that shortly after she and Haleck parted ways, the police received the very detailed and specific phone calls from the informant, leading her to believe that it was Haleck who made the phone calls. Therefore, Enoka alleges, confirming whether or not Haleck was the CI is helpful to her defense because he may have been the same person who planted the drugs.

 At the outset, we will note that because the CI in this case was not an active participant in the charged crime, Enoka faces an up-hill battle in convincing us to release the CI's identity. The CI merely informed the police that Enoka had been involved with an earlier uncharged drug transaction. The police used this information, not to build a case against Enoka for the crime she is currently charged with, but simply to supply themselves with probable cause to search her vehicle. *See United States v. Fixen*, 780 F.2d 1434, 1439 (9th Cir. 1986) (finding that it is "well-settled" that an informant's identity need not be disclosed where the informant's information was simply used to establish probable cause); *United States v. Bender*, 5 F.3d 267, 270 (7th Cir. 1993) (holding that informant's identity should not be revealed where informant witnessed unrelated crime and reported it to the police, who then only used the information to create probable cause for a search warrant).

Furthermore, Enoka has not adequately explained how an asserted confirmation that Haleck is the informant would assist in her substantive defense. If she is correct, and Haleck is the informant, it is not clear how that information would be helpful. Enoka has not convinced us that if Haleck did turn out to be the informant, such information would make it more or less likely that the drugs found in Enoka's truck belonged to Haleck. Additionally, even if we refuse to disclose the informant's identity, this does not stop Enoka from being able to question Haleck about his involvement in the charged crime. In short, we find that Enoka gains very little from learning the identity of the CI.

Therefore, in sum, we hold that Enoka has not met her burden in establishing that it would be helpful for her defense to learn the true identity of the confidential informant.

### Order

1. Enoka's motion to suppress evidence is denied.

2. Enoka's motion to reveal the CI's identity is denied.

It is so ordered.