**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ricky L. O'NEILL, Defendant–Appellant.**

No. 96–3268.

United States Court of Appeals, Seventh Circuit.

Argued March 26, 1997.

Decided June 17, 1997.

Sharon Jackson (argued), Victoria Ursulskis, Office of the United States Attorney, Indianapolis, IN, for plaintiff–appellee.

William E. Marsh (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for defendant–appellant.

Before PELL, KANNE and DIANE P. WOOD, Circuit Judges.

PELL, Circuit Judge.

Ricky O'Neill was a peripheral participant in a large-scale marijuana distribution ring which centered around Robert Iatarola, a marijuana distributor, and Robert Ridings, a drug dealer who often bought marijuana from Iatarola. Ridings would typically rent two cars to drive to Iatarola's home in Nashville, Indiana to buy marijuana; Ridings would drive one car and O'Neill would often drive the other. O'Neill and Ridings traveled to Iatarola's home to purchase marijuana between ten and fifteen times. On these trips, O'Neill met Iatarola, and often smoked cocaine with Iatarola and Ridings. O'Neill also met Bill Rall, another one of Ridings's suppliers.

O'Neill also knew many of Ridings's customers. On various occasions, O'Neill accompanied Ridings to the home of Peter LaMantia, one of Ridings's major customers, whom O'Neill also knew socially. O'Neill knew many of Ridings's other customers by sight and name.

In 1989, the DEA arrested Ridings. As part of his plea agreement, Ridings identified Iatarola as one of his sources of marijuana. Ridings also identified O'Neill and described his role in the marijuana distribution scheme.

In 1991, O'Neill testified under a grant of statutory immunity before a federal grand jury investigating Iatarola. Although O'Neill admitted to accompanying Ridings on his trips to buy marijuana, he denied ever having met Iatarola or even knowing from whom Ridings purchased marijuana. Instead, he stated that Ridings would leave him at a bar while he (Ridings) actually purchased the marijuana. O'Neill further stated that Ridings followed a similar procedure when they re-sold the marijuana, and thus, O'Neill denied knowing any of Ridings's customers.

In 1995, O'Neill was charged in a 1–count indictment with making a false material declaration before a federal grand jury. 18 U.S.C. § 1623(a). The indictment charged him with falsely stating "that he did not know the names of either Ridings'[s] marijuana sources or his marijuana customers; that he did not know from whom Ridings' [sic] acquired marijuana, that he did not know a Robert Iatarola; and that he never knew or met the people to whom Ridings took marijuana."

The case was tried before a jury. After both sides had presented their respective arguments, the court held a conference in chambers to discuss jury instructions. O'Neill requested that the court instruct the jury that it could not find him guilty of perjury for making statements before the grand jury which were literally true, but were nonresponsive to the question asked and were therefore misleading or false only by implication. The court refused to give the proffered instruction, and O'Neill then entered his objection into the record. The jury returned a verdict of guilty, and the court sentenced O'Neill to 27 months' imprisonment. This appeal followed.

### Discussion

■ O'Neill raises two points on appeal. He first argues that under *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the district court erred by refusing to give his proffered instruction regarding literally true but misleading answers. The government contends, however, that O'Neill did not object properly to the court's refusal to give the proffered instruction, and thus, that we may review the court's refusal only for plain error.

After the in-chambers instructions conference, O'Neill's attorney read the following objection into the record:

Defendant objects to the Court's refusal to include defendant's Proposed Instruction Number 2 [relating to literally true but misleading statements made under oath]. Some of the testimony of Mr. O'Neill, which is charged in the indictment, that having been a false declaration of the grand jury, is the type described in the

*Bronston*, B-r-o-n-s-t-o-n, case, in that some of the questions are subject to the interpretation that the answer was literally true, but was non-responsive in such a way as to imply that the answer was false.

According to the government, this objection does not satisfy Rule 30 of the Federal Rules of Criminal Procedure. Rule 30 requires that, in order to raise an argument concerning jury instructions on appeal, a party must object to the instructions, "stating distinctly the matter to which the party objects and the grounds of the objection." The government submits that O'Neill's objection was inadequate because it failed to specify which statements that O'Neill made to the grand jury fell under the *Bronston* rule.

■ Although there is some persuasive appeal to the government's position on this issue, we on the facts here involved find there is no reason to accept the government's position. The purpose of Rule 30 is to alert the district court to potential problems in jury instructions and thereby avert any error in the first place. *United States v. Young*, 997 F.2d 1204, 1208 (7th Cir.1993). The government makes no claim that O'Neill failed to present adequately his objection at the jury instructions conference. Having done so, O'Neill was not required to adhere to any "formalities of language and style" to preserve his objection on the record. *United States v. Martinez*, 988 F.2d 685, 698 (7th Cir.) (citation omitted), *cert. denied*, 510 U.S. 841, 114 S.Ct. 127, 126 L.Ed.2d 91 (1993). It is enough in this case that O'Neill's objection stated distinctly the matter to which he objected—the court's refusal to give the *Bronston* instruction—and the grounds for his objection—his belief that some of his answers were literally true but misleading. *See id.* (objection to refusal to give jury instruction preserved for appellate review even though counsel did not quote the particular portion of testimony relied upon); *see also United States v. Addo*, 989 F.2d 238, 243 n. 2 (7th Cir.1993) (objection that "there is not any evidence in this record" to warrant instruction held sufficient to preserve objection for appellate review).

■ Having determined that O'Neill preserved this objection for appellate review, we turn now to the propriety of the district court's refusal to tender the proposed instruction. O'Neill contends that under *Bronston*, the district court should have instructed the jury that an answer which was literally true but nonresponsive to the question asked, and was therefore misleading, could not constitute a false declaration.[1] Although the proffered instruction is a correct statement of the law, *see United States v. Chaplin*, 25 F.3d 1373, 1377, 1380 (7th Cir.1994); *United States v. Laikin*, 583 F.2d 968, 970–71 (7th Cir.1978) (applying *Bronston* to prosecutions under § 1623), the district court correctly refused to tender it to the jury because none of the false statements O'Neill was charged with making were susceptible of the interpretation that they were literally true but misleading.

As the factual basis for the charge brought against O'Neill, paragraph 5 of his indictment quoted thirteen questions and answers from his grand jury testimony:[2]

(1) Q: Was the purpose of those [vehicle rentals], where Robert Ridings is shown as the renter and you are shown as the second driver, have been [sic] for the purpose of transporting marijuana?

O'NEILL: He used them for transporting or whenever he'd go do cocaine, he'd go rent a car and sometimes just go—he had property down in Waverly, and he would just go sit down on his property inside of the car and do it.

(2) Q: Did you go with him on those trips?

A: I've done that once or twice with him.

(3) Q: No more than that?

A: I don't remember it's been so long ago. It's something I don't even care to remember. I'm lucky to be alive from it.

(4) Q: Do you know any of the individuals to whom marijuana was taken?

A: No, I don't.

(5) Q: Do you know any of the individual's names or nicknames that supplied marijuana?

A: No, I don't.

* * * * *

(6) Q: Where did you go to pick up marijuana?

A: We would drive to Bloomington. He would drop me off at a bar and then he'd be gone for an hour to an hour and a half and he'd come back and get me and then we'd drive back to Indianapolis.

(7) Q: Did you ever go to Nashville?

A: I—left me twice at the Nashville Alps ski place down there and I'd go to the bar there, then he'd come to back and pick me up.

(8) Q: Did you ever go [to] the residence of Robert Iatarola I-a-t-a-r-o-l-a?

A: I don't believe I know that person.

(9) Q: You've not heard that name?

A: No.

(10) Q: Do you know where Mr. Ridings was getting his marijuana?

A: I have no idea. I made a point not to meet anybody that he knew so in case I ever did get in trouble I wouldn't be in this position. I—I just drove his car because I didn't want to have anything to do with his dealings.

* * * * *

(11) Q: What was the procedure for delivering marijuana after it had been picked up?

A: Most of the time after he got it, we'd take it back and he would work it up, and most of the time people came

---

1. For example, in *Bronston*, the defendant was asked whether he personally had ever held a Swiss bank account. He replied, "The company had an account there for about six months, in Zurich." In fact, the defendant previously had held a personal account in a Swiss bank. *Bronston*, 409 U.S. at 354–55, 93 S.Ct. at 597–98. The defendant's answer, although literally true, was non-responsive to the question. It was misleading in that it implied that the answer to the question asked—whether he personally had ever held a Swiss bank account—was "no." *Id.* at 355, 93 S.Ct. at 598.

2. We have numbered the questions for ease of discussion.

and got it. But sometimes he would take it someplace, but not very often.

(12) Q: Did you drive to make deliveries?

A: Once or twice.

(13) Q: Where did you go?

A: To wherever he took it to, I never met the people. I would stay out in the car. I would never go in.

Paragraph 6 of the indictment contains the actual charge. That paragraph states that:

The aforesaid testimony of RICKY LEE O'NEILL as he then and there well knew and believed, was false in that: Peter A LaMantia ("LaMantia") obtained marijuana from Ridings, who, when he delivered it to LaMantia's home, was accompanied by RICKY LEE O'NEILL, who met LaMantia; on at least one occasion, RICKY LEE O'NEILL personally delivered marijuana to LaMantia; RICKY LEE O'NEILL met Iatarola on more than one occasion when RICKY LEE O'NEILL and Ridings were picking up marijuana from Iatarola; [and] RICKY LEE O'NEILL personally made payment to Iatarola for marijuana.

All in violation of Title 18, United States Code, Section 1623(a).

O'Neill contends that the district court erroneously refused to tender the requested *Bronston* instruction because his answers to questions 1, 2, 6, 7 and 12 were literally true but misleading, and that the jury may have convicted him based only upon these answers. These were not the false statements with which O'Neill was charged in the indictment, however. The indictment did not charge that every answer listed in the factual background in paragraph 5 was false. Rather, O'Neill was charged only with falsely denying that he knew Iatarola or LaMantia, or that he knew any of Ridings's other suppliers or customers. So far as the charged false testimony is concerned, only O'Neill's answers to questions 4, 5, 8, 9, 10 and 13 are relevant. O'Neill makes no argument that any of these answers are susceptible of the interpretation that they were literally true but misleading, nor do we think there is any way to so construe them.

Moreover, there was no charge in the indictment that the particular facts O'Neill stated in his answers to questions 1, 2, 6, 7 or 12 were material to the grand jury investigation. Rather, paragraph 4 of the indictment alleged that it was "material to the investigation to determine whether Robert Ridings'[s] ... statement identifying Iatarola as the source of his marijuana and identifying Ridings'[s] marijuana customers could be corroborated."

Admittedly, the jury heard testimony that O'Neill's answers to questions 2, 6, 7 and 12 were false. But the court instructed the jury that "[i]n order to convict [the] defendant of making a false declaration before a grand jury, ... the government would have to prove ... that the defendant, while under oath, testified falsely before a United States grand jury, as charged in the indictment [and] that the defendant's testimony related to some material matter...." As we said, paragraph 6 of the indictment made clear that O'Neill was charged only with falsely disclaiming knowledge of Ridings's suppliers or customers, and only these answers were alleged to be material.

We presume that juries understand and follow jury instructions. *United States v. Marshall*, 75 F.3d 1097, 1108 (7th Cir.1996); *Gacy v. Welborn*, 994 F.2d 305, 313 (7th Cir.), *cert. denied*, 510 U.S. 899, 114 S.Ct. 269, 126 L.Ed.2d 220 (1993). Thus, we presume that the jury's verdict in this case reflects its conclusion that O'Neill lied about not knowing Ridings's suppliers or customers, as charged in the indictment, rather than its belief that any of O'Neill's answers to questions 1, 2, 6, 7 or 12 were false. Accordingly, because O'Neill was not charged with perjury for any of the answers he claims are susceptible of a *Bronston* interpretation, the district court correctly refused to offer the proposed *Bronston* instruction. *See United States v. Lahey*, 55 F.3d 1289, 1297 (7th Cir.1995) (defendant not entitled to a jury instruction relating to uncharged conduct); *see also United States v. Frey*, 42 F.3d 795, 800 (3d Cir.1994) (same); *United States v. Innamorati*, 996 F.2d 456, 484 (1st Cir.1993) (same), *cert. denied*, 510 U.S. 955, 114 S.Ct. 409, 126 L.Ed.2d 356 (1994); *United States v. Huguez-Ibarra*, 954 F.2d 546, 553–54 (9th Cir.

1992) (same); *United States v. Derezinski*, 945 F.2d 1006, 1012 (8th Cir.1991) (same).

O'Neill's second claim on appeal challenges his sentence. Under the federal Sentencing Guidelines, O'Neill's base offense level for perjury was 12. U.S.S.G. § 2J1.3(a). The court then enhanced O'Neill's offense level by three points for substantial interference with the administration of justice, U.S.S.G. § 2J1.3(b)(2), for a total offense level of 15. With a criminal history category of II,[3] O'Neill faced 21–27 months' imprisonment. The court sentenced O'Neill to 27 months in prison. O'Neill submits that the 3–point enhancement for substantial interference with the administration of justice was erroneous.

The commentary to § 2J1.3(b)(2) explains that "substantial interference with the administration of justice" includes "the unnecessary expenditure of substantial government or court resources." U.S.S.G. § 2J1.3(b)(2), comment. (n.1). The district court found that O'Neill's lies forced the government to expend substantial resources in its investigation of Iatarola that it otherwise would not have had to spend. Accordingly, the court found that the 3–point enhancement under sub-section (b)(2) was warranted.

O'Neill submits that his sentence cannot be enhanced for forcing the government to expend additional resources because he was merely asked to corroborate information the government already possessed, rather than to furnish "new" information the government did not already possess. This argument is meritless.[4] Regardless of whether the government was seeking new facts or verification of facts it already possessed, O'Neill's lies forced the government to look elsewhere for the information it sought, thereby expending additional resources. In this case, the government had to expend substantial additional resources to corroborate Ridings's testimony after O'Neill failed to do so. The court had substantial evidence before it of the additional resources the government had to expend in its investigation as a result of O'Neill's prevarications, and thus, its factual holding is supported by a preponderance of the evidence. A district court's factual rulings in sentencing need be supported by only a preponderance of the evidence, *United States v. Bailey*, 97 F.3d 982, 985 (7th Cir. 1996), and where they are so, we will not disturb those rulings on appeal.

Finally, the commentary to § 2J1.3(b)(2) also states that "substantial interference with the administration of justice" includes the "premature or improper termination of a felony investigation." U.S.S.G. § 2J1.3(b)(2), comment. (n.1). As an alternate basis for its holding enhancing O'Neill's sentence under subsection (b)(2), the district court noted that the government was forced to grant immunity to additional witnesses to corroborate Ridings's testimony, which resulted in the termination of the felony prosecutions against those witnesses. This, too, was an appropriate basis for enhancing O'Neill's sentence. *United States v. Butt*, 955 F.2d 77, 88 (1st Cir.1992)..

AFFIRMED.

---

**3.** O'Neill had 1 criminal history point for his conviction for criminal non-support. Because he was on probation for that offense at the time he committed the instant offense of conviction, he received 2 additional criminal history points, U.S.S.G. § 4A1.1(d), which placed him in category II.

**4.** O'Neill cites *United States v. Jones*, 900 F.2d 512 (2d Cir.), cert. denied, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990), in support of his argument, but that case is clearly distinguishable. In *Jones*, the Second Circuit noted that "the district court did not make any specific finding that Jones'[s] perjury ... resulted in any substantial expenditure of governmental resources." Id. at 521–22.. The court then noted

that "[i]n some cases, where the defendant has concealed evidence and is the only known source of information, substantial interference with the administration of justice may be inferred" and that "the government urges such an inference here." *Id.* at 522. The court rejected that inference after *Jones* produced "substantial evidence that the government already had the information Jones concealed." *Id.*

In this case, the government did not ask the district court to "infer" that it spent substantial additional resources because of O'Neill's perjury. Rather, there was extensive evidence before the district court of those expenditures, and the district court made a specific factual finding based on that evidence.