In the

# United States Court of Appeals

### For the Seventh Circuit

————————

No. 07-1816

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES R. WHEELER,

*Defendant-Appellant.*

————————

Appeal from the United States District Court for
the Northern District of Indiana, South Bend Division.
No. 06 CR 59—**Robert L. Miller**, **Jr.**, *Chief Judge.*

————————

ARGUED APRIL 15, 2008—DECIDED SEPTEMBER 2, 2008

————————

Before CUDAHY, KANNE and SYKES, *Circuit Judges.*

CUDAHY, *Circuit Judge.*  A jury convicted James Wheeler
of embezzling, stealing or otherwise converting employee
contributions to his company's health insurance and 401(k)
funds in violation of 18 U.S.C. §§ 669 and 664. The district
court sentenced him to concurrent 63 and 60 month
sentences and three years' supervised release. On appeal,
Wheeler raises two challenges to his conviction. First, he
contends that the district court erred in defining the *mens*

*rea* element of the offense under § 669. He also argues that the court admitted impermissible prior act evidence in violation of Federal Rule of Evidence 404(b). In addition to challenging his conviction, Wheeler challenges his sentence on the grounds that the district court imposed an enhancement that lacked evidentiary support. We affirm Wheeler's conviction and sentence.

## I. Background

James Wheeler is a former paper salesman with an entrepreneurial streak. His enterprising spirit motivated him to invest in several financially troubled printing companies. By his account, he hoped to turn the companies around and make a profit. A more cynical view, advanced by the government, is that he used at least one of the companies as a personal piggybank, paying himself large managerial fees while the struggling company failed to make good on its debts and obligations to its employees. Wheeler's conduct with respect to that company, Gallery Graphics, was the subject of the criminal prosecution leading to this appeal.

Wheeler's foray into the corporate turnaround business began in 2001 when he purchased Hiney Printing, a family-run business in Akron, Ohio. In April 2002, Wheeler leased Fortran Printing (Fortran), another printing company facing a doubtful financial future. That same year, Wheeler and his business partner, James Lundquist, approached First Business Capital (FBC) seeking financing to purchase Peterson Printing, a medium-sized family-operated company in South Bend, Indiana. Wheeler and Lundquist

reached an agreement with FBC under which Wheeler would personally guarantee $900,000 of a $3,000,000 line of credit from FBC and would contribute $200,000 of paper stock as capital to Peterson Printing. After the Peterson Printing sale closed in June 2002, Wheeler and Lundquist became managers of the new venture, which they renamed Gallery Graphics South Bend (Gallery Graphics). The day-to-day operations at Gallery Graphics were handled by its president, Michael Kile, and its chief financial officer (CFO), Larry Parks. The financial situation of Gallery Graphics declined quickly after the sale to Wheeler. Wheeler had pledged to provide $200,000 of paper stock pursuant to his agreement with FBC, but he never did so. He withdrew $150,000 from Gallery Graphics less than one month after purchasing the company, ostensibly in order to purchase paper for the company. Gallery Graphics never received the paper. The company also paid him $148,000 in management fees and $28,000 to pay legal bills and credit card expenses. In early 2003, FBC stopped funding Gallery Graphics due to Wheeler's repeated failure to fulfill promises to provide money and paper to the company.

Beginning in December 2002, as Gallery Graphics' financial situation grew increasingly precarious, Wheeler became more involved in the day-to-day operations of the company, directing Kile and Parks as to which bills to pay. In early 2003, Wheeler directed Gallery Graphics not to pay either the health or the retirement plan. But employees who participated in the company health plan authorized Gallery Graphics to withhold contributions from their paychecks. Likewise, the contributions of

employees who participated in the company's 401(k) plan were automatically withheld from their paychecks. These funds were placed in Gallery Graphics' general operating account and were supposed to be forwarded by check to the insurance and retirement plans. Starting in 2003, however, the funds that were withheld from employees' paychecks to pay the premiums for those plans were diverted for other purposes.

Based on the company's nonpayment of premiums, the health insurance company that carried the health insurance plan cancelled the company's coverage in May 2003, retroactive to January 2003. In total, approximately $42,000 of employee health insurance contributions and $11,000 of employee 401(k) contributions that had been withheld from employees' paychecks never reached the coffers of the respective plans. By late spring of 2003, Gallery Graphics was on its last legs. On May 12, 2003, Wheeler wired $100,000 to the company to help fund its final payroll. Two days later, on May 14, the health insurance company sent employees a notice stating that their insurance coverage had been cancelled. Around this time, FBC installed a receiver and began liquidating Gallery Graphics' assets.

In May 2006, Wheeler was indicted for embezzling his employees' premiums. Count I of the indictment charged him with knowingly and willfully embezzling $42,020.26 in health insurance premiums in violation of 18 U.S.C. § 669. Count II charged him with willfully embezzling $11,702.53 of his employees' 401(k) contributions in contravention of 18 U.S.C. § 664. Wheeler's jury trial

began on September 18, 2006. During the trial, the government introduced evidence relating to Wheeler's nonpayment of employee contributions at Fortran. The evidence showed that when Wheeler was in charge at Fortran, insurance premiums were deducted from employees' paychecks but were never remitted to the insurance plan, resulting in cancellation of coverage. Ultimately, Fortran went into receivership. The court permitted the introduction of this evidence (the Fortran evidence) over defense counsel's objection. After a five-day trial, the jury convicted Wheeler on both counts.

At sentencing, Wheeler objected to the amount of loss calculation in the Pre-Sentence Investigation Report (PSR). The amount of loss represented the sum of the unpaid insurance premiums, unpaid 401(k) contributions and medical claims that were incurred by employees but went unpaid due to the cancellation of their health insurance coverage. The PSR included in the loss amount all unpaid medical claims from the time Wheeler acquired Gallery Graphics in June 2002 through June 2003. Wheeler objected to the inclusion of claims incurred by employees in June 2003 on the grounds that the company "was dissolved in late April, early May 2003." The government responded to his objection by suggesting that the court use May 12, 2003 as the cut-off date. That is, the government urged the court to include all unpaid claims that arose prior to the date Wheeler funded the company's final payroll. The court accepted the government's recommendation as to the cut-off date. Using May 12, 2003 as the cut-off date eliminated $3,073 from the amount of loss figure in the PSR, yielding a total loss of $210,902.84. Under

the Sentencing Guidelines, a loss in excess of $200,000 corresponds to a twelve-level increase in a defendant's base offense level. U.S.S.G. § 2B1.1. After accounting for adjustments to Wheeler's base offense level, the district court concluded that Wheeler's total offense level was 26. When considered alongside a criminal history category of I, his offense level yielded a guideline range of 63 to 78 months' incarceration. After reviewing the sentencing factors set forth in 18 U.S.C. § 3553(a), the court sentenced Wheeler to 63 and 60 months on Counts I and II respectively, to be served concurrently, as well as three years' supervised release and restitution of $210,902.84. Wheeler filed a timely notice of appeal on March 28, 2007.

## II.  Analysis

Wheeler raises three challenges to his conviction and sentence. First, he argues that the district court erred in failing to instruct the jury that conduct done "knowingly and willfully" under 18 U.S.C. § 669 must be done in contravention of a known legal duty. Second, he contends that the district court abused its discretion when it permitted the government to introduce the Fortran evidence. Finally, Wheeler argues that the court's adoption of the amount of loss included in the PSR is clearly erroneous. We take up each of his challenges in turn.

## A.  Jury instructions

Wheeler contends that the district court erred in failing to instruct the jury that in order to find Wheeler guilty, in

the statutory language, of "knowingly and willfully" misappropriating his employees' health insurance premiums, they must conclude that he knew he was violating the law. As a threshold matter, we must clarify the standard of review, which the parties dispute. The government asserts that Wheeler did not object to the proposed definition of "knowingly and willfully," and thus our review is for plain error. Wheeler protests that he did challenge the definition, although he concedes that he may have done so unartfully. In order to preserve an objection to a proposed jury instruction for appellate review, "a party must object to the instructions, 'stating distinctly the matter to which the party objects and the grounds of the objection.' " *United States v. O'Neill*, 116 F.3d 245, 247 (7th Cir. 1997) (quoting FED. R. CRIM. P. 30). "The purpose of Rule 30 is to alert the district court to potential problems in jury instructions and thereby avert any error in the first place." *Id*.

The district court did not define "knowingly and willfully" as a single defined term. Rather, after setting out the elements of each offense, the district court provided the jury with separate definitions of each term, defining "knowingly" and "willfully" as follows:

> The word "knowingly" means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

> When the word "willfully" is used in these instructions, it means that an act is done deliberately and

> intentionally, as distinguished from something that is merely careless, inadvertent, or negligent. Conduct may be willful even if the actor had a good faith intent to return the funds or had basically good intentions, such as keeping the company afloat or preserving jobs.

Wheeler objected to the final sentence of the "willfully" definition on the grounds that the defense had not suggested that Wheeler had acted in good faith and consequently, the sentence might confuse the jury. This objection is substantively different from the objection Wheeler now raises and could not be expected to focus the court's attention on the alleged error that Wheeler now seeks to correct, namely that "knowingly and willfully" requires proof that the defendant violated a known legal duty. *See Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002) (discussing sufficiency of objection under FED. R. CIV. P. 51 and explaining that "[t]he objection must be specific enough that the nature of the error is brought into focus"). Because Wheeler did not explain to the district court the objection he raises on appeal, he has not preserved it. *Id*. at 730. Thus, we review his claim for plain error. *United States v. Jackson*, 479 F.3d 485, 491 (7th Cir.), *cert. denied*, 128 S. Ct. 49 (2007).

Wheeler faces an uphill battle since it is rare that we reverse a conviction on the basis of an improper jury instruction to which there was no objection. *Id*; *United States v. Griffin*, 84 F.3d 912, 925 (7th Cir. 1996) ("Our plain error review is particularly light-handed in the context of jury instructions."). An error is "plain" if it was "(1) clear and uncontroverted at the time of appeal and (2) affected

substantial rights, which means the error affected the outcome of the district court proceedings." *United States v. Fernandez*, 282 F.3d 500, 509 (7th Cir. 2002).

18 U.S.C. § 669 provides:

> Whoever knowingly and willfully embezzles, steals, or otherwise without authority converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program, shall be fined under this title or imprisoned not more than 10 years, or both . . . .

Neither the parties nor this court have been able to identify a case interpreting "knowingly and willfully" in the context of § 669. " 'Willful[ ]' . . . is a 'word of many meanings,' and 'its construction [is] often . . . influenced by its context.' " *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)). It may refer to a defendant's "awareness of his conduct (i.e., that it be intentional)," or to his "conscious awareness of both his conduct and its illegality." *Griffin*, 84 F.3d at 925. Where a defendant is accused of violating a technical statute, such as a criminal tax statute or a statute prohibiting the structuring of financial transactions, "willfully" has been construed to require proof that the defendant acted with knowledge that his conduct violated a legal duty. *See, e.g., Ratzlaf*, 510 U.S. at 144-46 (structuring); *Cheek v. United States*, 498 U.S. 192, 201 (1991) (violation of tax laws); *United States v. Kelley*, 864 F.2d 569, 573 (7th Cir. 1989) (same). Unlike the statutes at issue in *Ratzlaf*

or *Cheek*, § 669 is not the kind of technical statute that the Supreme Court has found to be an "exception to the traditional rule that ignorance of the law is no excuse." *Bryan v. United States*, 524 U.S. 184, 195 (1998) (internal quotation marks and citation omitted). The prohibition on stealing or converting employee health insurance funds does not involve the kind of complex statutory scheme at issue in the federal tax or structuring laws that may create a trap for the unwary.

Still, there is some support for the argument that in general, "willfully" means more than acting intentionally when it is used conjunctively with "knowingly." *See United States v. Ill. Cent. R.R. Co.*, 303 U.S. 239, 243 (1938) (" 'Willfully' means something not expressed by 'knowingly,' else both would not be used conjunctively.") (citation omitted); *United States v. Stockheimer*, 157 F.3d 1082, 1088 (7th Cir. 1998); *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996), *aff'd*, 522 U.S. 23 (1997) (construing 20 U.S.C. § 1097(a), a statute that makes it a crime to "knowingly and willfully" misapply federally insured student loan funds, to require proof that the defendant knew his conduct was unlawful). In general, courts are reluctant to treat statutory terms as "mere surplusage," and the Supreme Court has observed that "resistance should be heightened when the words describe an element of a criminal offense." *Ratzlaf*, 510 U.S. at 140-41; *see also Potter v. United States*, 155 U.S. 438, 446 (1894). Thus, there is a plausible argument that the use of "knowingly and willfully" in § 669 may require that a defendant know that his conduct was in some way unlawful.

Even if the court's instruction on the *mens rea* element of § 669 may have been erroneous, in order for an error to be "plain," it must "be sufficiently certain and sufficiently prejudicial that the trial judge and prosecutor were derelict in countenancing it." *United States v. Caputo*, 978 F.2d 972, 975 (7th Cir. 1992). Here, the absence of controlling case law on the question of § 669's *mens rea* and the fact that "'[w]illfully' is a notoriously slippery term," *United States v. Ladish Malting Co.*, 135 F.3d 484, 487 (7th Cir. 1998), weigh against the plainness of any error.

Moreover, even if the jury instructions were erroneous, Wheeler cannot satisfy the third requirement of plain error analysis, i.e., "that the error affected the defendant's 'substantial rights.'" *United States v. Ross*, 77 F.3d 1525, 1540 (7th Cir. 1996) (citation omitted). This prong of our plain error analysis "calls for the same inquiry as 'harmless error' analysis, except that here the defendant bears the burden of persuasion with respect to prejudice." *Id.* As applied to this case, in order to show that the alleged error warrants reversal of his conviction, Wheeler must show "that the jury verdict in this case was actually affected by the district court's faulty instruction." *Id.* He must establish that the error is "likely to have made a difference in the judgment, so that failure to correct it could result in a miscarriage of justice, that is, in the conviction of an innocent person." *United States v. Newman*, 965 F.2d 206, 213 (7th Cir. 1992).

Although in general, the failure to instruct the jury clearly on an element of the crime is plain error, this is not always the case. *See United States v. Kerley*, 838 F.2d 932,

938 (7th Cir. 1988). "[T]he effect rather than the character of an instructional error is what is important." *United States v. Perez*, 43 F.3d 1131, 1139 (7th Cir. 1994). Wheeler contends that the court's error created a presumption as to the disputed element of intent. We disagree. The dispute over intent at trial focused on whether Wheeler knew that the premiums were not being remitted as required. Rather than creating a presumption as to this disputed issue, the instructions required the jury to find that Wheeler knew that the premiums were not being applied to pay for the company's insurance coverage. Moreover, the underlying acts themselves subsume a finding of bad purpose. The jury was required to find that Wheeler "did knowingly and willfully . . . embezzle, steal, otherwise without authority convert to the use of any person other than the rightful owner or intentionally misapply" assets of the health insurance program. "Embezzle" was defined as "the fraudulent appropriation of property by one lawfully entrusted with its possession" and "convert" as "the use of property in an unauthorized manner or to an unauthorized extent." Wheeler essentially contends that the jury may have concluded that he embezzled or converted without authorization the employees' premiums but that he thought doing so was lawful. This seems rather implausible and is further undermined by Wheeler's own testimony. At trial, Wheeler admitted that he knew the premiums were supposed to be paid and claimed that he believed they were being remitted. Thus, his own testimony evinces an awareness of the wrongfulness of the failure to pay them. Assuming, without deciding, that the court erred in its instruction

to the jury, its error was not so outrageous as to cast doubt on the fairness, integrity or reputation of the proceedings and does not require remand for a new trial.[1]

## B. Fortran evidence

Wheeler contends that the admission of the Fortran evidence violated Federal Rule of Evidence 404(b). We review the admission of prior act evidence for abuse of discretion. *United States v. Mallett*, 496 F.3d 798, 801 (7th Cir. 2007). "Rule 404(b) prohibits the use of evidence of other bad acts to show that a defendant has a propensity to commit a crime and that he acted in accordance with that propensity on the occasion in question." *United States v. Chavis*, 429 F.3d 662, 667 (7th Cir. 2005). To ensure that prior act evidence is not admitted to prove "the defendant's character or that he acted in conformity with that character on a given occasion," *United States v. Ross*, 510 F.3d 702, 713 (7th Cir. 2007), such evidence may be admitted only if the following criteria are satisfied:

---

[1] In a footnote in his opening brief, Wheeler invites us to interpret "willfully" to require the violation of a known legal duty as it applies to the entirety of Chapter 31 of the Criminal Code and, in doing so, to vacate Wheeler's conviction under 18 U.S.C. § 664. Wheeler does not provide any support or argument for his suggestion that "willfully" as set forth throughout Chapter 31 means the violation of a known legal duty. We decline to take up a contention raised as a skeletal argument. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) ("[C]onclusory analysis will be construed as waiver.").

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*Mallett*, 496 F.3d at 801. The district court permitted the government to introduce evidence of the nonpayment of employee health insurance premiums at Fortran in order to show that Wheeler knew how insurance premium withholdings must be handled and to show the absence of mistake or accident. Wheeler concedes that the Fortran evidence served these non-propensity purposes. Wheeler argues that the Fortran evidence fails to satisfy the second prong of our Rule 404(b) test because it was not similar enough to his alleged conduct at Gallery Graphics to be probative of knowledge or lack of mistake. The similarity "prong of our Rule 404(b) *analysis need not be unduly rigid*: we have stated that 'when evidence is offered to prove intent, the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent.'" *United States v. Long*, 86 F.3d 81, 84 (7th Cir. 1996) (quoting *United States v. Lloyd*, 71 F.3d 1256, 1264-65 (7th Cir. 1995)) (emphasis in original). Whether the prior conduct is similar enough to the acts for which the defendant is being tried "depend[s] on the theory that makes the evidence admissible, and

must be reached on a case-by-case basis." *Id.* (quoting *United States v. Torres*, 977 F.2d 321, 326 (7th Cir. 1992)).

Wheeler points out that he owned Gallery Graphics for almost one year but only leased Fortran for approximately two months, and that the incident at Fortran involved bounced checks rather than a complete failure to attempt to send premiums to the insurance company. These differences are "distinction[s] without substance." *United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006) (quoting *United States v. Puckett*, 405 F.3d 589, 597 (7th Cir. 2005)). Wheeler also contends that he was much more involved in the operations at Gallery Graphics than at Fortran. The extent of his involvement in Fortran was established in part by the testimony of Mark Dottore, the individual who was appointed to be the receiver for Fortran. Dottore testified that Wheeler controlled the day-to-day operations at Fortran and that funds withheld from Fortran employees' paychecks to pay their health insurance premiums stopped being sent to the insurance company shortly after Wheeler leased Fortran. In sum, at both Fortran and Gallery Graphics—two companies controlled by Wheeler—employees' health insurance premiums were withheld from their paychecks but were never paid to the insurance company, resulting in cancellation of the employees' insurance coverage. The events at Fortran and Gallery Graphics are sufficiently similar to satisfy the second prong of our Rule 404(b) analysis.

Wheeler also contends that there is insufficient evidence to support a jury finding that he was responsible

for the mishandling of employee premiums at Fortran. To satisfy the third prong of our Rule 404(b) analysis, the government is not required to produce smoking gun evidence of the defendant's culpability in the prior conduct. The third prong is satisfied if the evidence presented is such that "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988); *see also United States v. Burke*, 425 F.3d 400, 410 (7th Cir. 2005). As we have noted, Dottore testified that Wheeler controlled Fortran. Lundquist, Wheeler's former partner, testified that Wheeler directed the cash disbursements at Fortran. Thus, even in the absence of direct evidence that Wheeler ordered the nonpayment of premiums at Fortran, the government adduced sufficient evidence that a jury could reasonably find that he was responsible for the nonpayment of premiums. The evidence was properly admitted under the third prong of the test.

Finally, Wheeler argues that the prejudicial effect of the evidence substantially outweighed its probative value. It is significant to our analysis of the prejudice prong that Wheeler refused a limiting instruction. We have noted that the risk of unfair prejudice can be mitigated by a limiting instruction. *See, e.g.*, *Jones*, 455 F.3d at 809 (limiting instructions "are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence") (citation omitted); *United States v. Best*, 250 F.3d 1084, 1093 (7th Cir. 2001). Wheeler was twice offered a limiting instruction and twice declined it. Because Wheeler waived the opportunity to alleviate the risk of unfair prejudice, we decline to

reverse the district court's evidentiary ruling on the grounds that the Fortran evidence was unfairly prejudicial. *See Goetz v. Cappelen*, 946 F.2d 511, 514 (7th Cir. 1991) (defendants' declination of limiting instruction waived their claim of prejudice).

## C. Amount of loss

Wheeler's final challenge is to the district court's amount of loss determination, which we review for clear error. *United States v. Lopez*, 222 F.3d 428, 436 (7th Cir. 2000). A defendant who challenges a district court's loss calculation carries a heavy burden, for he must show "that the calculation was not only inaccurate, but also outside the realm of permissible computation." *United States v. Mantas*, 274 F.3d 1127, 1131 (7th Cir. 2001). At his sentencing hearing, Wheeler argued that because Gallery Graphics closed down "in late April, early May, depending on what you determine to be the final day," it was inappropriate to include medical claims that employees incurred after the company closed down. After the company closed in late April or early May, he reasoned, employees could not reasonably expect their health insurance coverage to continue into June.

Wheeler contends that the district court's selection of May 12, 2003 as the cut-off date for unpaid medical claims was arbitrary. He asserts that Gallery Graphics had closed its doors well before May 12, 2003. Although the company's former CFO, Parks, testified that the facility stopped producing product toward the end of April 2003 and closed, he also testified that he continued

to work with Wheeler to reopen the facility. In addition, Parks testified that Wheeler told him that the 401(k) and health insurance premiums would be paid once he obtained funding. The company had a payroll date in May 2003 and Wheeler testified at trial that employees were ready to walk out the door before he wired the $100,000 on May 12, suggesting that the company had not closed for good as of that date. On May 14, 2003, the insurance company gave employees notice that their coverage had been cancelled. The court's selection of a date two days before that official notice was sent was a reasonable estimate of the date after which no employee could have reasonably believed he had insurance coverage.

Wheeler also argues that the evidence on which the court relied did not support its loss determination. At sentencing, the government introduced a spreadsheet that showed the claims that were submitted to the health insurance company and the dates of service for those claims. Wheeler contends that this evidence is insufficient to support the amount of loss found by the district court because the document did not list the names of the employees who submitted claims. Wheeler argues that some of these employees may have left the company before they submitted claims and that it would be unfair to include in the amount of loss calculation claims an employee submitted after he was no longer employed at the company, i.e., when he could not reasonably expect to have insurance coverage through Gallery Graphics. Wheeler does not cite any evidence that supports his bare speculation and the court's reliance on evidence of employees' claims that were accrued

before the insurance company cancelled coverage was not "outside the realm of permissible computations." *United States v. Radziszewski*, 474 F.3d 480, 486 (7th Cir. 2007) (quoting *Lopez*, 222 F.3d at 437).

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.