# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3692

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES DISANTIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06-CR-728—**Charles P. Kocoras**, *Judge.*

ARGUED SEPTEMBER 18, 2008—DECIDED MAY 4, 2009

Before EASTERBROOK, *Chief Judge,* and SYKES and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* A jury convicted police officer James DiSantis of depriving a suspect's right to be free from unreasonable seizure, in violation of 18 U.S.C. § 242. On appeal, DiSantis raises several challenges to the jury instructions given at his trial. Finding no reversible error in the instructions, we affirm the conviction.

## I. Background

On September 3, 2003, DiSantis, an officer of the Cicero, Illinois Police Department, passed Jennifer Pine while driving through Chicago. DiSantis knew of prior criminal activity by Pine, as well as by her two passengers, Stephen Roden and Robert Bertucci, and suspected that Pine was either driving a stolen vehicle or heading to buy drugs. Acting on this hunch, DiSantis followed Pine and pulled her over on Central Avenue. According to Pine's testimony, DiSantis pulled her out of the car by the hair and struck her multiple times in the head. DiSantis denied pulling Pine's hair or striking her, testifying that he only raised his voice during the course of the traffic stop.

While this incident was transpiring, Hector Montes passed DiSantis's and Pine's stopped cars and saw DiSantis striking Pine. Hector continued south on Central Avenue to his home, where he picked up his brother, Richard Montes. The Montes brothers then drove back north on Central Avenue on their way to view a construction project at Millennium Park, which Richard planned to record with his video camera. When they passed the point of the traffic stop, Hector and Richard saw that DiSantis and Pine were still at the scene, but now joined by a second police car driven by Joseph Melone, another Cicero police officer who worked under DiSantis.

The Montes brothers pulled into a parking lot across from the traffic stop, and Richard attempted to record the incident with his video camera. After a few minutes, Hector and Richard decided to leave the scene and con-

tinued on Central Avenue. But by that time, DiSantis and Melone had spotted Hector's SUV, and both officers testified that they thought that the video camera that Richard had pointed out of the passenger window was actually a gun. The officers accordingly pursued and pulled Hector over at a nearby hospital parking lot.

DiSantis approached the passenger side of Hector's SUV. According to the Montes brothers, DiSantis immediately went up to the passenger window and wrestled the video camera away from Richard. The Montes brothers further testified that DiSantis began screaming at them and demanding the camera's "memory stick." After Hector told DiSantis that he did know anything about the memory stick, DiSantis struck Hector with the camera across the face and again on the head. DiSantis then threw the camera on the ground and stepped on it. DiSantis also conducted a pat-down search of both men and squeezed their genitals.

After finding a bullet magazine in Hector's SUV, DiSantis arrested Hector for unauthorized possession of ammunition and took him to the Cicero police station. Hector was released later that evening, after which he went to the hospital. DiSantis filed a police report on the incident and submitted Richard's video camera as evidence.

Based on these events, the government charged DiSantis with willfully depriving Pine and Hector of their constitutional right to be free from unreasonable seizure, in

violation of 18 U.S.C. § 242.[1] The case proceeded to a six-day jury trial at which several witnesses, including DiSantis, testified about the Pine and Montes traffic stops. The government capably impeached DiSantis's testimony using the police report that he filed on the Montes incident. For example, after DiSantis denied grabbing Richard's video camera, the government read a portion of DiSantis's report stating that "Hector Montes, was clutching the . . . video camera" and that "DiSantis removed the camera from the suspect by force." The government also noted that DiSantis's report catalogued the camera as "damaged," suggesting that DiSantis was lying when he testified that he had not deliberately stepped on the camera.

Following the presentation of evidence, the district court held a jury instructions conference and reviewed the parties' proposed instructions. Citing the inconsistencies between DiSantis's testimony and his police report, the government requested an instruction that the jury could

---

[1] 18 U.S.C. § 242 provides, in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section . . . shall be fined under this title or imprisoned not more than ten years, or both . . . .

consider DiSantis's prior inconsistent statements for their truth, not merely for assessing DiSantis's credibility. The court agreed and gave, over DiSantis's objection, the government's proposed instruction on the substantive use of DiSantis's prior inconsistent statements. The court also gave the government's proposed instructions defining the "bodily injury" that triggers an enhanced maximum sentence under 18 U.S.C. § 242, as well as the "reasonable force" that an officer may justifiably use against a suspect. Finally, the court rejected DiSantis's request for a "missing witness" instruction regarding Robert Bertucci and Steven Roden, potential government witnesses who, according to DiSantis, were controlled by the government and unavailable to the defense.

The jury found DiSantis not guilty of violating Pine's constitutional rights but guilty of violating Hector's rights.[2] The district court imposed a sentence of 66 months' imprisonment. On appeal, DiSantis challenges the jury instructions on the use of his prior inconsistent statements, the "bodily injury" element of § 242, and the "reasonable force" that DiSantis could justifiably use against Pine and Hector. DiSantis also challenges the district court's refusal to give his proposed "missing witness" instruction.

---

[2] The jury also found DiSantis not guilty of a third count of violating § 242, which related to an earlier incident not material to this appeal.

## II. Discussion

We review de novo a district court's decision to give or refuse a jury instruction "when the underlying assignment of error implicates a question of law," but "general attacks on the jury instructions are reviewed for an abuse of discretion." *United States v. Macedo*, 406 F.3d 778, 787 (7th Cir. 2005) (citation omitted). The district court "is afforded substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *United States v. Gibson*, 530 F.3d 606, 609 (7th Cir. 2008) (quoting *United States v. Lee*, 439 F.3d 381, 387 (7th Cir. 2006)), *cert. denied*, 129 S. Ct. 1386 (2009). "Reversal is proper only if the instructions as a whole are insufficient to inform the jury correctly of the applicable law and the jury is thereby misled." *United States v. Madoch*, 149 F.3d 596, 599 (7th Cir. 1998).

### A. Prior Inconsistent Statements

Based on the inconsistences between DiSantis's testimony and his police report, the district court instructed the jury that they could consider DiSantis's prior inconsistent statements as substantive evidence. The given instruction provided:

> A statement made by the defendant before trial that is inconsistent with the defendant's testimony here in court may be used by you as evidence of the truth of the matters contained in it, and also in deciding the truthfulness and accuracy of the defendant's testimony at trial.

This instruction is substantively identical to Instruction 3.10 from the Federal Criminal Jury Instructions of the Seventh Circuit. Fed. Crim. Jury Instr. 7th Cir. 3.10 (1999). (Although not pre-approved by the Seventh Circuit Judicial Council for use in any particular case, these published Circuit instructions, often referred to as "pattern" instructions, reflect the work of judges and lawyers with significant experience in criminal trials, *id.* at v, ix; but of course, "pattern" instructions don't fit every case, *see United States v. Hill*, 252 F.3d 919, 922 (7th Cir. 2001).)

DiSantis argues that, by authorizing the jury to consider his prior inconsistent statements for their truth, the district court unduly emphasized his inconsistent statements over those of other witnesses. He observes that the court cautioned that the jury could not consider other witnesses' prior inconsistent statements for their truth unless the witnesses made the statements "under oath." According to DiSantis, highlighting his prior, unsworn, inconsistent statements as substantive evidence, while limiting non-party witnesses' prior inconsistent statements to impeachment-only evidence, drew a prejudicial distinction between him and other witnesses.

DiSantis is correct that the district court's instructions set different standards for the substantive use of his and other witnesses' prior inconsistent statements. DiSantis is incorrect to suggest that this party-based distinction is in any way legally erroneous. The Rules of Evidence plainly distinguish between the prior inconsistent statements of non-party witnesses and of party-opponents like DiSantis. The former are admissible as non-hearsay, substantive

evidence only if "subject to cross-examination" and "given under oath." Fed. R. Evid. 801(d)(1)(A); *United States v. Dietrich*, 854 F.2d 1056, 1061 (7th Cir. 1988) ("If a prior inconsistent statement meets the [oath and cross-examination] requirements of Rule 801(d)(1)(A) it may be admitted as substantive evidence . . . . A prior inconsistent statement that does not meet one of the criteria of Rule 801(d)(1)(A), however, may be used only for the purpose of impeaching the witness."). The latter are admissible as substantive evidence even if not given under oath. Fed. R. Evid. 801(d)(2)(A); *United States v. Spiller*, 261 F.3d 683, 690 (7th Cir. 2001) ("A party's own statements offered against him are considered admissions by a party-opponent, and, as such, are not hearsay and are admissible under Fed. R. Evid. 801(d)(2)(A)."). The district court's instruction on the substantive use of DiSantis's prior inconsistent statements was unquestionably a correct statement of the law.

DiSantis also argues that his police report did not qualify as an admission by a party-opponent, such that the district court had no basis for instructing the jury on the substantive use of his prior inconsistent statements. However, under Rule 801(d)(2)(A), "written statements may be admitted as non-hearsay against the party who made the statement." *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 779 (7th Cir. 2006); *see also Spiller*, 261 F.3d at 690 (characterizing a defendant's handwritten ledgers indicating the quantities of crack cocaine that he sold as admissions by a party-opponent); *United States v. Harvey*, 117 F.3d 1044, 1049-50 (7th Cir. 1997) (concluding that a defendant's handwritten letters and diaries docu-

menting his marijuana production were admissions by a party-opponent). Applying that principle in a similar § 242 case arising out of a police officer's use of excessive force, the First Circuit concluded that the officer's arrest report fell within the hearsay exemption of Rule 801(d)(2)(A). *United States v. Rios Ruiz*, 579 F.2d 670, 675-77 (1st Cir. 1978). Likewise, DiSantis's prior inconsistent statements in his police report qualified as party admissions, and the district court committed no error in instructing the jury that they could consider those statements for their truth.

## B. Bodily Injury

DiSantis next objects to the jury instruction defining the "bodily injury" element of § 242, which, if proved, triggers an enhanced ten-year maximum sentence under the statute. The district court gave the government's proposed instruction on bodily injury, which provided:

> If you find that defendant DiSantis is guilty of any count, you will have to determine whether the government proved beyond a reasonable doubt that defendant's acts resulted in bodily injury with respect to that count. The government need not prove that the defendant intended to cause bodily injury to the victim; the government need only prove that bodily injury resulted from the defendant's unlawful conduct. "Bodily injury" includes any injury that is painful and obvious, even if the victim does not seek medical attention. Bodily injury includes a cut, abrasion, bruise, physical

pain, or any other injury to the body no matter
how temporary.

DiSantis argues that this instruction is too broad, reaching
even trivial forms of bodily injury not intended to fall
within the reach of § 242. Before addressing this argu-
ment, we must resolve the government's claim that
DiSantis has waived, or at least forfeited, his objection
to the bodily injury instruction.

A defendant waives an objection to jury instructions
if "the record illustrates that the defendant approved of
the instructions at issue." *United States v. Pree*, 408 F.3d
855, 872 (7th Cir. 2005) (quoting *United States v. Griffin*,
84 F.3d 912, 924 (7th Cir. 1996)). The "touchstone" of the
waiver inquiry is "whether and to what extent the defen-
dant ha[s] actually approved of the jury instructions
assigned as error on appeal." *Griffin*, 84 F.3d at 924. Waiver
"extinguishes any error" and "precludes appellate re-
view." *Pree*, 408 F.3d at 872.

In contrast to waiver, forfeiture occurs where a de-
fendant fails to object to a proposed jury instruction by
"stating distinctly the matter to which the [defendant]
objects and the grounds of the objection." *United States v.
Wheeler*, 540 F.3d 683, 688 (7th Cir. 2008) (quotation omit-
ted); *see also* Fed. R. Crim. P. 30(d) (providing that ob-
jections to jury instructions "must inform the court of the
specific objection and the grounds for the objection").
Although forfeiture does not preclude appellate review
as does waiver, we review forfeited objections only for
plain error. *Griffin*, 84 F.3d at 924-25. An error is plain if
it was "(1) clear and uncontroverted at the time of appeal

and (2) affected substantial rights, which means the error affected the outcome of the district court proceedings." *Wheeler*, 540 F.3d at 689 (quotation omitted). Further, plain-error review is "particularly light-handed in the context of jury instructions," since it is unusual that any error in an instruction to which no party objected would be so great as to affect substantial rights. *Griffin*, 84 F.3d at 925.

During the jury instructions conference, DiSantis's counsel objected to the portion of the instruction providing that the government only had to prove that bodily injury "resulted from" DiSantis's conduct. Defense counsel argued that the instruction should require that DiSantis actually "caused" bodily injury. The court rejected the proposed change as inconsequential, since the government's theory relied on proving causation:

| THE COURT: | . . . they [the government] are not going to argue—they are going to argue that there was a cause and effect relationship. |
| DEFENSE COUNSEL: | Okay. |
| THE COURT: | I think this is a correct instruction, but I do not think your fear is going to—there is any risk of your fear materializing, seriously. Okay? |
| DEFENSE COUNSEL: | Thank, you Judge. |

We disagree with the government's characterization of counsel's thanking the judge as a waiver of the objection to the bodily injury instruction. We read that response as a display of civility after having one's argument heard and rejected, not as the type of actual approval of a jury instruction that would constitute waiver. *Cf. United States v. Anifowosche*, 307 F.3d 643, 650 (7th Cir. 2002) (defense counsel's affirmative response to the court's statement for the record "that the instructions were given without objection by either side" was a waiver); *Griffin*, 84 F.3d at 923-24 (defense counsel's agreement that it preferred the instruction offered by the court was a waiver). Moreover, at the end of the instructions conference, defense counsel expressly preserved his "continuing objection to the jury instruction on bodily injury . . . ." The court responded that "the instruction objections have all been preserved."

Although DiSantis did not waive his objection to the bodily injury instruction, we agree with the government that he forfeited it. As noted above, DiSantis's objection at trial focused on the lack of a causation requirement, while his objection on appeal focuses on the breadth of the definition of "bodily injury." Since DiSantis's objections at trial and on appeal are "substantively different," we will limit our review of the instruction for plain error. *Wheeler*, 540 F.3d at 689.

In determining whether the given instruction "correctly states the law," *Gibson*, 530 F.3d at 609, we cannot rely on § 242 itself, which does not define bodily injury. However, the final sentence of the instruction tracks the language

of several criminal statutes that define bodily injury as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." 18 U.S.C. § 831(f)(5) (prohibited transactions involving nuclear materials); *id.* § 1365(h)(4) (tampering with consumer products); *id.* § 1515(a)(5) (definition applicable to witness tampering, § 1512, and witness retaliation, § 1513); *id.* § 1864(d)(2) (hazardous or injurious devices on federal lands). The remaining portion of the instruction is similar to the definition of bodily injury provided by the Sentencing Guidelines. *See* U.S.S.G. § 1B1.1 cmt. n.1(B) (defining bodily injury as "significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought"). Relying on these provisions, two other circuits have appropriately approved jury instructions on the bodily injury element of § 242 similar to the instruction given here. *See United States v. Bailey*, 405 F.3d 102, 111 (1st Cir. 2005); *United States v. Meyers*, 972 F.2d 1566, 1572-73 (11th Cir. 1992).

Based on this authority, we cannot say that the district court's instruction on bodily injury provided the jury with an incorrect statement of the law, especially since DiSantis has failed both in the district court and on appeal to offer an alternative definition of bodily injury. *See Myers*, 972 F.2d at 1572 (observing that the defendant had challenged the breadth of the bodily injury instruction but had not offered the district court an alternative definition). DiSantis has failed to show any "clear and

uncontroverted" error in the instruction that would justify reversal on plain-error review. *Wheeler*, 540 F.3d at 689.

Moreover, given the trial testimony on the extent of bodily injury suffered by Hector Montes, DiSantis cannot show that any error in the instruction "affected the outcome of the district court proceedings." *Id.* Hector testified that DiSantis, infuriated by Hector's inability to tell him about the video camera's memory stick, struck Hector with the camera once on the face and again on the head. Hector suffered headaches and a cut on his face to the right of his nose. Richard Montes's testimony confirmed that DiSantis hit Hector in the face, drawing blood, and the government introduced a police photo of Hector following his arrest that showed a red mark to the right of his nose. Hector also testified that DiSantis grabbed his testicles during a pat-down search, causing pain, and that Hector went to the hospital following his release from the Cicero police station to seek treatment for his injuries.

Based on this evidence, the injuries suffered by Hector would satisfy a definition of bodily injury far more restrictive than that given by the district court. So even if DiSantis were correct that the court's definition was too broad, that error would be harmless.

## C.  Reasonable Force

DiSantis's third argument challenges the jury instruction defining the "reasonable force" that DiSantis could use in detaining Hector Montes without violating his constitutional rights. The given instruction provided:

> In this case, if you find that the defendant used force against . . . Hector Montes, you must then determine whether the force he used against that individual was reasonable or unreasonable. In making that determination, you should consider all the circumstances from the point of view of an ordinary and reasonable officer on the scene, including the seriousness of the offense that the individual may or may not have committed, whether that individual posed an immediate threat to the safety of defendant DiSantis, and whether that individual was actively resisting arrest or attempting to evade arrest by flight.

DiSantis argues that this instruction fails to adequately define what force is reasonable "from the point of view of an ordinary and reasonable officer on the scene." Because no witness was qualified as an expert on reasonable police force, DiSantis continues, the instruction invited the jury to attach undue weight to the testimony of Officer Joseph Melone, a government witness who was the only other "officer on the scene."

Again, our first task in addressing this argument is to ascertain the applicable standard of review. During the jury instructions conference, defense counsel expressed concern with the phrase instructing the jury to "consider all of the circumstances and point of view of an ordinary and reasonable officer on the scene." The court responded that the language was in many ways favorable to DiSantis, telling jurors that "objectivity is the standard" and that they may not judge reasonable force from their own

"particularly sensitive" viewpoints. Counsel seemed to accept this response, and the parties moved on to discuss other instructions. When the court later returned to the reasonable force instruction and asked whether the defense "was comfortable with the rest of it," counsel balked: "I can't say 'comforted,' but I do not even know how to frame my argument. Something feels wrong about it, but I do not think that is going to help my position."

This expression of general discomfort falls short of the specific objection that we require in order to preserve a challenge to a proposed jury instruction. *See Wheeler*, 540 F.3d at 688. We will accordingly review the instruction only for plain error. And the district court did not plainly err in giving an instruction that so closely tracks the Supreme Court's description of the type of reasonable force that an arresting officer may use without violating a suspect's Fourth Amendment rights. In *Graham v. Connor*, 490 U.S. 386, 388 (1989), the Court held that claims of excessive police force against an arrestee are subject to a test of "objective reasonableness." That test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "'reasonableness' of a particular force must be judged from the perspective of a reasonable officer on the scene." *Id.* Relying on *Graham*, we have upheld a jury instruction that put forth this objective, "reasonable law enforcement officer on the

scene" test in another § 242 case charging a police officer with the use of excessive force. *United States v. Brown*, 250 F.3d 580, 586 (7th Cir. 2001). DiSantis's challenge to the district court's reasonable force instruction is therefore without merit, especially since, as with the bodily injury instruction, DiSantis fails to offer an alternative definition of reasonable force.

We also disagree with DiSantis that the instruction would have been adequate only if accompanied by expert testimony on reasonable police force. Although in some instances expert testimony may assist the jury in determining whether an officer used excessive force, *see Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987), expert testimony is by no means required in all excessive force cases. Since the question of excessive force is so fact-intensive, the jury will often be "in as good a position as the experts" to decide whether the officer's conduct was "objectively reasonable." *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006). The jury in this case, having heard extensive testimony on the facts and circumstances surrounding the traffic stops, was well-positioned to decide whether DiSantis used reasonable force.

### D. Missing Witness Instruction

DiSantis's final argument challenges the district court's refusal to give a "missing witness" instruction—that is, an instruction that the prosecution's failure to call a witness may give rise to an inference that the witness's testimony would have been unfavorable to the government. *United States v. Gant*, 396 F.3d 906, 910 (7th

Cir. 2005) (citing Fed. Crim. Jury Instr. 7th Cir. 3.24 cmt. (1999)). DiSantis argues that the court should have tendered a missing witness instruction as to Robert Bertucci and Steven Roden, passengers in Pine's car during the traffic stop and potential government witnesses.

A district court has "broad discretion" in refusing to give missing witness instructions, which are generally disfavored. *See United States v. Brock*, 417 F.3d 692, 699 (7th Cir. 2005). "To establish entitlement to a missing witness instruction, a defendant must prove two things: first, that the absent witness was peculiarly within the government's power to produce; and second, that the testimony would have elucidated issues in the case and would not merely have been cumulative." *Gant*, 396 F.3d at 910 (quoting *United States v. Valles*, 41 F.3d 355, 360 (7th Cir. 1994)).

It is clear from the record that Bertucci and Roden were not so peculiarly within the government's control as to justify a missing witness instruction. At the instructions conference, the district court noted that the defense could have subpoenaed both Bertucci and Roden, yet defense counsel offered no explanation for failing to do so. The absence of any explanation, either in the district court or on appeal, why the defense did not subpoena these witnesses demonstrates that DiSantis was not entitled to a missing witness instruction. *See id.* (observing that the defendant had neither attempted to subpoena the witness nor "offered a satisfactory explanation for failing to do so"); *United States v. Romo*, 914 F.2d 889, 894 (7th Cir. 1990) (noting that the defendant

failed to subpoena, interview, or request the production of the witness); *cf. United States v. Cochran*, 955 F.2d 1116, 1122 (7th Cir. 1992) (affirming the district court's refusal to allow comment on the absence of government witnesses during closing arguments where the defendant "could have issued subpoenas to both 'missing witnesses'").

Although the absence of peculiar government control is alone sufficient to deny a missing witness instruction, DiSantis also fails to explain how Bertucci's and Roden's testimony would have "elucidated issues." *Gant*, 396 F.3d at 910. While these men were passengers in Pine's car and so might have offered some material testimony on the charged violation of her rights (of which DiSantis was acquitted), they presumably did not even see the assault on Hector Montes, which was the basis of DiSantis's conviction. Both requirements for a missing witness instruction are lacking.

### III. Conclusion

For the foregoing reasons, we AFFIRM DiSantis's conviction.